COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Annunziata and Overton
Argued at Norfolk, Virginia


BILLY LEE TAYLOR
                                      OPINION BY
v.          Record No. 0377-96-1    JUDGE ROSEMARIE ANNUNZIATA
                                      JUNE 17, 1997
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                  Von L. Piersall, Jr., Judge

          Sterling H. Weaver, Sr., for appellant.

          John H. McLees, Jr., Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Appellant, Billy Lee Taylor, was convicted by a jury of

second degree murder and a related firearm charge.  On appeal, he

contends the trial court erred in refusing to grant a mistrial

based on a juror's delayed response to a voir dire question.

Finding no error, we affirm his convictions.

                              I.

     During voir dire, the trial court asked prospective jurors,

"Have any of you ever been the victim or have any members of your

immediate family ever been the victim of a violent crime?"  Juror

Clements did not respond.  Following the exercise of peremptory

challenges, Clements was included as a jury member.  After

impanelment and opening statements, but before evidence was

presented, the court recessed for lunch.  Upon reconvening,

Clements revealed that she had not disclosed during voir dire

that her husband had been held up at gunpoint earlier that year.

Clements reiterated the inadvertence of her nondisclosure and stated her belief that she could try the case at bar on the basis of the evidence presented.[1]

---

[1]In a conference room out of the jury's presence but in the presence of appellant and the attorneys for both parties, the following colloquy transpired between the court and juror Clements:

| | |
|---|---|
| COURT: | Okay.  Miss Clements, we're back here in my chambers.  I understand the Bailiff tells me that you have remembered that you husband had been the victim of a violent crime, is that right? |
| JUROR: | Well, you know, when you said violent crime, it didn't really register and, you know what I mean, he was held up -- |
| COURT: | At gunpoint? |
| JUROR: | Gunpoint. |
| COURT: | When was that? |
| JUROR: | You know what, I can't -- This is awful.  It was either the spring or the early summer. |
| COURT: | This year? |
| JUROR: | This year. |
| COURT: | Was there a trial? |
| JUROR: | No, no. |
| COURT: | Never had to go to court or anything like that? |
| JUROR: | No, sir. |
| COURT: | Well, the question, you know, I've asked others is that do you think that that experience would in any way prevent you from trying this |

(..continued)

> case, listening to the evidence and making a decision in this case without being affected, prejudiced in any way by the experience your husband had?

JUROR:  I wouldn't think so.  Now, I'm saying I wouldn't think so in the respect that I didn't even remember it, I really didn't, and I said I've got to tell somebody because I got real nervous about it after I remembered it.

COURT:  I think it's appropriate --

JUROR:  I didn't mean to do this, I really didn't.  I'm so sorry.

COURT:  Do you think then it would in some way affect you ability to make a decision based on the evidence you hear in court or not?

JUROR:  I'm trying to be as objective as I know how and I don't think it would because I don't think that it would affect my judgment.

COURT:  Okay.  You think that you could put that out of your mind, do you?

JUROR:  I'm trying, now that I remember -- I know this sounds terrible and I hate to do this to you worse than anything in the world --

COURT:  That's all right.  I want you to be honest and straightforward.

JUROR:  It made me real nervous, scared me.

COURT:  I understand that.  Don't be afraid because we understand.  What I want to know now, though, is now that you've remembered it, do you believe you could try this case today and the next couple of days and render a verdict based only on the law and the evidence that you

hear in this case without in any way being affected by the experience or the knowledge that your husband had this experience?

Are you having some trouble?  You're hesitating.

JUROR:  Yes, I am, and that's why; it scared me to death, it really did.

COURT:  What scared you to death.

JUROR:  It scared me it didn't come to my mind and then when I thought about it I said Oh, my Lord.  Then when I started thinking about it, the more I thought about it --

COURT:  The more you thought about the incident, you mean?

JUROR:  Right.

COURT:  The more you thought about it, what?

JUROR:  That I'm trying, I'm going to be as objective, use my own judgment.

COURT:  You mean you can use your own judgment without being affected by the knowledge that your husband was held up, is that right?

JUROR:  Yes, sir.  I'm -- I feel terrible about this, I really do.

COURT:  Stop worrying about that now, about the fact that you didn't tell us. That's neither here nor there right now.  What I want to know is --

JUROR:  Whether I can do this right?

COURT:  You can do this without having that interfere with your judgment?

JUROR:  To the best of my ability, I'll do the best I can.

Appellant's counsel asked no questions of Clements but requested a mistrial, stating

> I doubt very seriously if there would have been grounds to strike her for cause, I think you probably would have allowed her to stay on the panel, but that would have been information that only she could have provided to us that would have been valuable to us in determining whether or not we wanted to exercise a strike to remove her from the panel.
>
> We now are at the point where we've exhausted all of our strikes, the jury has been selected and seated and now this information comes to bear; and I can tell the Court that with someone who'd been, someone who had a family member, a husband who'd been robbed at gunpoint within the last six months and with the assailant not being apprehended, I would have, on behalf of my client, exercised a strike to remove that person from the panel, not because I would have felt that the person would have been biased or prejudiced either in favor of the Commonwealth or the defendant, but because those life experiences may have in some way filtered over into her decision-making process here today.
>
> I am now without the ability to do that. The only way I can get the ability to select a jury based on the information from the questioning being given properly is that that information is given before I have the opportunity to use up my strikes. That being passed, I would ask that the Court grant a

(..continued)

> COURT:   I know you will, but do you think you can put that out of your mind and try this case just on the evidence that you hear in this courtroom?
>
> JUROR:   Yes, sir, I think I can.

- 5 -

mistrial.

The court found that Clements had not intentionally withheld the information and that "she honestly believe[d] and demonstrated that [the incident would] not interfere with her judgment."  The court denied appellant's motion for mistrial, finding that going forward would not prejudice appellant.

## II.

We address the issue whether Clements' failure to give a timely response to the <u>voir</u> <u>dire</u> question prejudiced appellant's right of peremptory challenge such that the trial court erred in refusing to grant a mistrial.[2]  "`On appeal the denial of a motion for a mistrial will not be overruled unless there exists a manifest probability that the denial of a mistrial was prejudicial.'"  <u>Bottoms v. Commonwealth</u>, 22 Va. App. 378, 385, 470 S.E.2d 153, 157 (1996) (citation omitted).

While the issue presented in this case has not been addressed in Virginia, it was settled by the United States Supreme Court in <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548 (1984).  <u>See also</u> <u>Zerka v. Green</u>, 49 F.3d 1181 (6th Cir. 1995); <u>United States v. Edmond</u>, 43 F.3d 472 (9th Cir. 1994);

---

[2]The thrust of appellant's argument on brief is that Clements' disclosure established that she was unable to stand indifferent to the cause and that the trial court, therefore, erred in refusing to grant a mistrial.  Appellant did not raise this argument at trial, where he stated his belief that Clements was not subject to a strike for cause.  To the extent appellant now argues that Clements should have been stricken for cause, his contention is procedurally barred.  Rule 5A:18.

Rasmussen v. Sharapata, 895 P.2d 391 (Utah Ct. App. 1995).  But see State v. Scher, 650 A.2d 1012, 1018-21 (N.J. Super. Ct. App. Div. 1994).

The McDonough Court evaluated whether the trial court abused its discretion in refusing to grant a new trial when it learned that a juror had failed to respond affirmatively to a voir dire question.  The Court premised its analysis on harmless error principles, which the Court found to reflect "the practical necessities of judicial management."  464 U.S. at 553-56.[3]  In that light, the Court found that "it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination."  Id. at 555.  Thus, the Court adopted the following rule:

> to obtain a new trial in such a situation, a
> party must first demonstrate that a juror
> failed to answer honestly a material question

[3] This Court has long held that "[a litigant] is entitled to a fair trial but not a perfect one, for there are no perfect trials." . . . We have also come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered "citadels of technicality."  The harmless error rules adopted by the Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for "error" and ignore errors that do not affect the essential fairness of the trial.

McDonough, 464 U.S. at 553 (citations omitted).

on <u>voir</u> <u>dire</u>, and then further show that a correct response would have provided a valid basis for a challenge for cause.  The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

<u>Id.</u> at 556.

Applying the <u>McDonough</u> analytical model here, we hold that the trial court did not abuse its discretion in refusing to grant a mistrial.  Notwithstanding Clements' failure to respond timely to the question propounded during <u>voir</u> <u>dire</u>, there was no dispute at trial that she stood indifferent to the cause.  Because there was no basis for a challenge for cause, Clements' presence on the jury did not affect the essential fairness of the trial, notwithstanding the impairment to appellant's right of peremptory challenge.  Thus, we find no manifest probability that the denial of appellant's motion for a mistrial was prejudicial.

Accordingly, the decision of the trial court is affirmed.

<u>Affirmed.</u>