COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Humphreys and Huff
Argued by teleconference


DEMONTE M. BURGESS

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 2225-11-2                JUDGE ROBERT P. FRANK
                                              OCTOBER 23, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Samantha E. Freed (Lepold & Freed, PLLC, on brief), for appellant.

Susan M. Harris, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Demonte M. Burgess, appellant, was convicted by a jury of attempted malicious wounding,

in violation of Code §§ 18.2-51, 18.2-26, using a firearm in the commission of a felony, in violation

of Code § 18.2-53.1, discharging a firearm in public, in violation of Code § 18.2-280, and

brandishing a firearm in public, in violation of Code § 18.2-282.  On appeal, he contends the trial

court erred in not removing Juror McComb for cause at mid-trial.  For the reasons stated, we affirm

the judgment of the trial court.

BACKGROUND

On May 9, 2010, a black vehicle pulled into a parking lot in the Wilton Farms apartment

complex.  Devon Tyree was seated in the back seat of the vehicle, with Quan Rafaly in the front

passenger seat and appellant in the driver's seat.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

A.D. approached the vehicle to speak to Tyree. After some argument, appellant pushed A.D. away from the car. A.D. then threw a soda can at appellant. Appellant exited the car and threw A.D. to the ground. After appellant let A.D. off the ground, A.D. walked away. Appellant then fired a shot at A.D. and drove away from the scene. A.D. was not hit. Neither Quan nor Tyree was involved in the incident. They were only bystanders.

During opening statements to the jury, the Commonwealth's Attorney mentioned "Quan" as being a front seat passenger. A.D. testified "Quan" was in the front passenger seat, but said that she did not know Quan's last name.

Devon Tyree, a defense witness, testified Quan is his brother and was seated in the front passenger's seat. Tyree did not indicate Quan's last name. Detective D.J. Harris testified that he had obtained information that a "Jaquan Rafaly" was a front seat passenger when the incident occurred.

Both sides rested. The parties then reviewed and argued the instructions to be given to the jury. At that point, the trial court was notified by the bailiff that Juror McComb had heard the name "Quan Rafaly" and said that she was Rafaly's first cousin.

The Commonwealth's Attorney replied that there was no testimony that Quan was involved other than being in the car. Defense counsel expressed a concern that McComb may have heard something about the incident from Quan.

The following dialogue then occurred:

| | |
|---|---|
| THE COURT: | Good afternoon. So, Ms. McComb, I understand that you recognized the name Quan Rafaly. |
| MS. McCOMB: | Yes. |
| THE COURT: | And how did you recognize the name? |
| MS. McCOMB: | That is my first cousin. |

THE COURT:          And have you talked to your first cousin about this case?

MS. McCOMB:         No, I have not spoken with him individually about it. I heard through my parents who are Quan's aunt and uncle that he was involved in a shooting incident and that was the extent of it.

THE COURT:          Do you know any information beyond that?

MS. McCOMB:         No, ma'am.

THE COURT:          Would that affect your ability to hear this case?

MS. McCOMB:         No, ma'am, I don't think so.

      *     *     *     *     *     *     *

MR. SNOOK [DEFENSE COUNSEL]:  Do you know --- is there any other detail that you have in your memory at this point about what you were told about this incident?

MS. McCOMB:         Just that he was involved in an incident and that it was not his gun.

MR. SNOOK:          Any other details that you remember?

MS. McCOMB:         No.

MR. SNOOK:          Have you ever heard him talk at all about Demonte Burgess?

MS. McCOMB:         No.

MR. SNOOK:          Or heard any other connection about Demonte Burgess or other participants in what happened that day?

MS. McCOMB:         No, I never heard any specific names.

MR. SNOOK:          Okay, thank you, that's all.

THE COURT:          And are you talking about Jaquan Rafaly?

MS. McCOMB:         Yes, he goes by Quan, R-a-f-a-l-y. My maiden name is Rafaly.

- 3 -

Appellant moved to strike McComb from the panel and declare a mistrial. He argued McComb had extra-judicial knowledge as well as a family relationship with Quan and knew more about the case than she described. Appellant expressed concern that during deliberations McComb may suddenly remember more details. Appellant offered no basis for his speculative belief that McComb knew more than she had disclosed to the court.

The court found McComb stated she would not have any problem setting the matter aside and concluded that for the court to assume otherwise would be speculative. Referring to the original *voir dire*, the court noted that when the entire panel was asked if anyone had acquired any information about the case, it did not register to McComb that the "Quan" mentioned in opening was her cousin. The trial court concluded that he did not believe McComb had any further information other than what she indicated.

This appeal follows.

ANALYSIS

On appeal, appellant argues that Juror McComb should have been removed from the panel: 1) because of the information she had concerning the instant offense; and 2) because of her familial relationship with Quan.[1] Appellant premises his argument on the fact that McComb was a first cousin of Quan, who was a passenger in the vehicle, and that McComb had obtained extra-judicial information from her parents, Quan's uncle and aunt. Appellant contends, as he did below, that there is a "possibility" that during deliberations, McComb would suddenly remember some other details about the incident.

"The right to be tried by an impartial jury is guaranteed under both the United States and Virginia Constitutions." Swanson v. Commonwealth, 18 Va. App. 182, 184, 442 S.E.2d 702,

_____

[1] Appellant did not argue below nor in his brief that public confidence in the integrity of the judicial system disqualifies Juror McComb. We will not raise the issue *sua sponte*.

- 4 -

703 (1994); see also Code § 8.01-358. In order for that guarantee to be effective, a person accused of violating criminal laws must be provided with "an impartial jury drawn from a panel [of twenty] free from exceptions." Breeden v. Commonwealth, 217 Va. 297, 300, 227 S.E.2d 734, 736-37 (1976). Every prospective juror must stand indifferent to the cause, "and any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused." Id. at 298, 227 S.E.2d at 735. Further, if a reasonable doubt exists as to whether the juror is qualified, he must be excluded. "'[I]t is not only important that justice should be impartially administered, but it also should flow through channels as free from suspicion as possible.'" Id. (quoting Wright v. Commonwealth, 73 Va. (32 Gratt.) 941, 943 (1879)). "These principles are to be strictly applied and when a prospective juror equivocates about whether he or she has formed a fixed opinion, the prospective juror should be stricken by the trial court." Clements v. Commonwealth, 21 Va. App. 386, 392, 464 S.E.2d 534, 537 (1995).

However, it is common during *voir dire* to discover that prospective jurors may have preconceived notions, misconceptions, or opinions about the particular case, or about the criminal justice system in general. See Cressell v. Commonwealth, 32 Va. App. 744, 761, 531 S.E.2d 1, 9 (2000). For a juror to be disqualified, he must entertain an opinion of fixed character, "'which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already.'" Justus v. Commonwealth, 220 Va. 971, 976, 266 S.E.2d 87, 91 (1980) (quoting Slade v. Commonwealth, 155 Va. 1099, 1106, 156 S.E. 388, 391 (1931)). Thus, "'the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial.'" Cressell, 32 Va. App. at 761, 531 S.E.2d at 9 (quoting Griffin v. Commonwealth, 19 Va. App. 619, 621, 454 S.E.2d 363, 364 (1995)).

Given that the trial court is able to see and hear each
member of the venire respond to questions posed during *voir dire*,

it is in a superior position to determine whether a prospective juror's responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath. Juror impartiality is a question of fact, and a trial court's decision to seat a juror is entitled to great deference on appeal. Accordingly, the decision to retain or exclude a prospective juror will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.

Lovos-Rivas v. Commonwealth, 58 Va. App. 55, 61, 707 S.E.2d 27, 30 (2011) (internal quotations and citations omitted.)

"'In conducting our review, we consider the juror's entire *voir dire*, not merely isolated statements.'" Thomas v. Commonwealth, 279 Va. 131, 164, 688 S.E.2d 220, 238 (2010) (quoting Lovitt v. Commonwealth, 260 Va. 497, 510-11, 537 S.E.2d 866, 875 (2000)) (other citations omitted).

The analysis for removing a juror mid-trial involves the same analysis used in determining whether to strike a juror during *voir dire*. Moreover, for a party to be entitled to a mistrial for jury misconduct which arises from *voir dire*, he must show: 1) that a juror failed to answer honestly a material question on *voir dire*; and 2) that a correct response would have provided a valid basis for a challenge for cause. "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." Taylor v. Commonwealth, 25 Va. App. 12, 18, 486 S.E.2d 108, 111 (1997). "[J]uror misconduct does not automatically entitle either litigant to a mistrial." Robertson v. Metropolitan Washington Airport Authority, 249 Va. 72, 76, 452 S.E.2d 845, 847 (1995). The trial court must also find a probability of prejudice, with the "burden of establishing that probability . . . upon the party moving for a mistrial." Id. Hence, we will not overturn "the denial of a motion for a mistrial . . . unless there exists a manifest probability that [the ruling] was prejudicial." Taylor, 25 Va. App. at 17, 486 S.E.2d at 110.

Here, appellant first argues McComb should have been removed because of her familial relation with Quan. In Virginia, there is no *per se* rule disqualifying a prospective juror who is related to a prosecution witness on the grounds that he is presumed to be biased, or not indifferent in the cause. Barrett v. Commonwealth, 262 Va. 823, 826, 553 S.E.2d 731, 733 (2001); see also Townsend v. Commonwealth, 270 Va. 331, 335, 619 S.E.2d 71, 74-75 (2005) (further explaining Barrett and this principle). If a prospective juror is related to a witness, the inquiry is whether that relationship would cause the juror to be biased or not stand indifferent to the cause.

However, it is also important to note that Quan did not testify. Appellant cites no cases, and we find none, requiring that a juror related to a non-testifying bystander be struck for cause or removed from the panel mid-trial.

Appellant does not allege juror dishonesty or misconduct. He does not argue that McComb untruthfully answered a question during *voir dire*, or that she tried to conceal her familial relationship with Quan. To the contrary, McComb revealed the relationship to the trial court. Furthermore, appellant does not contend McComb had prematurely formed any opinion as to the guilt or innocence of appellant. As such, we find no merit to appellant's argument.

Next, appellant maintains McComb should have been removed because she received extra-judicial information from her parents, Quan's uncle and aunt.

The facts before the trial court were that McComb never spoke to Quan about this case. The information McComb obtained from her parents was that Quan was involved in a shooting and that the gun involved was not his. McComb testified, without equivocation, that was the only information she had received. Appellant argues that because McComb knew her cousin was involved in the incident, she may have been biased against appellant in order to protect her

cousin. This argument is based on speculation. Appellant offered no explanation as to how McComb voting to convict appellant would benefit her cousin.

Further, McComb testified that the limited knowledge she had about the incident would not affect her ability to hear the case. The trial court, who had the opportunity to observe McComb's testimony and demeanor, found from these words that McComb could set aside the information she had received. The trial court also concluded that McComb had no further information than she revealed to the court. These factual findings will not be disturbed on appeal unless no evidence supports those findings. See Akers v. Commonwealth, 216 Va. 40, 46, 216 S.E.2d 28, 32 (1976). Further, as we have previously noted, juror impartiality is a question of fact. Wainwright v. Witt, 469 U.S. 412, 462 (1985).

Appellant's basis for McComb's exclusion is pure speculation. He contends McComb might, during deliberation, recall additional information. However, there is nothing in the record to suggest that McComb had any information other than what she had already disclosed.

We conclude the trial court did not abuse its discretion in not removing McComb. Based on McComb's *voir dire*, the trial court would not have erred in keeping McComb on the panel during the original *voir dire*. If, during the original *voir dire*, McComb had indicated she was the cousin of a non-testifying bystander, she would not have been struck for cause. Thus, we also find the trial court did not err in refusing to grant a mistrial.

<u>CONCLUSION</u>

For the foregoing reasons, we affirm the trial court's denial of appellant's motions to remove Juror McCombs and for a mistrial.

<u>Affirmed.</u>

- 8 -